This was a bill brought for an account of the personal estate of the intestate, the plaintiff's late father, and her share thereof under the statute of distributions. The defendants had exhibited the account of their administration to the county court, which was acted upon and passed. Upon an investigation of the items of said account in this court, a reference to the clerk and master and his report, a balance appeared in favor of said defendants, and, upon the question of costs, it was decreed that the complainant should pay them, for that the defendants, having exhibited their account to the county court, had furnished the complainant with the means of information respecting the management of the personal estate, and their conduct therein. That, from the inspection of this document, she had a view of the assets, assisting her inquiry, and was thereby so far able to see the state of her claim as to form an opinion on the probable result. That true it was she was not bound by this account, and the disposition of the assets therein was no evidence against her by virtue of its being passed by the County Court; but if, with this information, she chose to proceed and failed, she must abide the consequence; which, in the present instance, being against her, she must pay the costs. The true use of rendering the account to the County Court by executors and administrators was intended to operate as a check on their conduct, and to furnish information to those that might be interested in the *Page 124 
assets, as creditors, legatees, and distributive sharers. It can not be used as evidence of the administration of the assets by the defendants in any action brought against them, further than as complying with that part of their administration bond to the governor which requires such an account to be rendered. For all other purposes it is unavailing to them, being ex parte, taken by the Court at their instance, and upon their representation. Upon the report of the master stating the amount of the personal assets which came to the hands of the administrators, and, also, the amount of the expenditures made by them — two items, allowing them for services, were excepted to, and therefore the Court were called on to deliver the law on this point. And they said the Act of 1789, c. 23, sec. 2, directs that "no executor or administrator shall hereafter take, hold, or retain in his hands more of the deceased's estate than amounts to his necessary charges and disbursements, and such debts as he shall legally pay." "Charges and disbursements" are such unavoidable payments of money without which the estate of the testator can not be collected and disposed of for the benefit of his creditors. Funeral charges, charges for the probate of the will or granting letters of administration, recording of inventories, accounts of sales, orders of sales, and the charges of suits legally brought for the benefit of the estate, or of defending suits brought against them, and the like charges and disbursements, are allowable; but expenses in travelling and remaining at court, and others of a similar nature, are not allowable. These items for services and expenditures are not comprehended in the first class, therefore they must be disallowed. It was moved in this case, that the decree should be so drawn that the costs be paid by the next friend and not by the estate of the infant; and of this opinion the Court is. For the rule that condemns the prochein ami in costs originates in the protection that the Court extends to infants. The Court, for the benefit of infants, will *Page 125 
permit any person, upon his own judgment, at his own will, in the support of some right or the resistance of some injury, to exhibit a bill in chancery in behalf of an infant, without confining this permission to the father, mother, or other nearest relation. But while it does this, it is at the risk of costs; otherwise, from pique or some improper motive, this rule of protection might be abused, and a defendant unjustly harassed. It is upon this principle that the Court will permit the suit to be brought without the consent or even the knowledge, of the infant, only holding over the bringer of the suit the check of costs. And this rule of ordering the costs to be paid by theprochein ami seems to be so well established, that the law will not permit the testimony of the prochein ami to be given in evidence; nor even the testimony of the wife of the procheinami, on account of this liability. 3 Bac. Ab. Verbo. Infants; 2 Cowper, 29; 9 Ves. junior, 548.